[FOR PUBLICATION]                                          [35, 36]

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| O.T., a minor child, by and through her next friends, ROBERT T. TURTON and MARYANN TURTON, | : : : : |
| | :    Civil Action No. 05-2623 (FLW) |
| Plaintiffs, | : : : |
| v. | :      **OPINION** |
| FRENCHTOWN ELEMENTARY SCHOOL DISTRICT BOARD OF EDUCATION et al., | : : : : |
| Defendants. | : : |

**APPEARANCES:**

For Plaintiff, O.T., by and through her parents, Robert T. and Mary Ann Turton
Demetrios K. Stratis, Esq.
Law Offices of Demetrios K. Stratis
Wayne, NJ 07470

Jeffrey A. Shafer, Esq., Jeremy D. Tedesco, Esq., Benjamin W. Bull, Esq., Gary S. McCaleb, Esq., and David A Cortman, Esq.
Alliance Defense Fund

For Defendant, Frenchtown Elementary School District Board of Education
Ruseell Weiss, Jr., Esq.
Parker McCay, PA
Lawrenceville, NJ 08648

As amicus curiae on behalf of Plaintiff:
Jennifer A. Klear, Esq. and Edward Barocas, Esq.
American Civil Liberties Union of New Jersey
Newark, NJ 07102

Wan J. Kim, Esq., Eric Treene, Esq., Javier M. Guzman Esq., and Andrew R. Cogar, Esq.
U.S. Department of Justice
Washington, D.C. 20530

**WOLFSON, United States District Judge**

Presently before the Court are cross-motions for Summary Judgment by (i) Plaintiff, O.T., a  student[1] at Frenchtown Elementary School, by and through her parents, Robert T. Turton and Maryann Turton, and (ii) by Defendant[2], the Frenchtown Elementary School District Board of Education ("the Board").  In addition, the American Civil Liberties Union ("ACLU") of New Jersey and the Department of Justice filed Briefs as *Amicus Curiae* in support of Plaintiff's Motion for Summary Judgment.  Plaintiff contends that the Board violated her constitutional rights when it refused to allow her to perform the song "Awesome God" in an after-hours school-wide talent show.  Defendant refutes that contention and argues, further, that allowing Plaintiff to perform "Awesome God" would have amounted to a violation of the Establishment Clause.  The Court has considered the moving, opposition and reply papers of the parties, and the briefs of the *Amici*, and for the reasons stated in the opinion below, Plaintiff's Motion for Summary Judgment

_____

[1] Plaintiff was in second grade at the time of the May 2005 talent show at issue here.

[2] The Complaint originally named Catherine Lent ("Lent"), President of Frenchtown Board of Education, and Joyce Brennan ("Brennan"), Superintendent of Frenchtown School District and Principal of Frenchtown Elementary School, as individual Defendants in the instant matter.  However, on June 19, 2006, Plaintiff filed an unopposed Motion to Dismiss the Individual Claims against Lent and Brennan which this Court granted on November 21, 2006. Thus, the only remaining defendant is the Frenchtown Elementary School District Board of Education.

is granted and Defendant's Motion for Summary Judgment is denied.

## I. Background

The Frenchtown School District is comprised of a single building housing an elementary school with students ranging from pre-kindergarten through eighth grade. Plaintiff's Statements of Undisputed Material Facts ("Pl's Fact St.") ¶ 1; Defendant's Statement of Undisputed Material Facts ("Def's Fact St.") ¶ 5. Since 2000, Frenchtown Elementary School ("Frenchtown Elementary" or "Frenchtown School") has hosted at least four after-school talent shows in which students from kindergarten through eighth grade, as well as some adults[3], were invited to showcase their talents and skills. Id. ¶ 2; id. ¶ 27. The talent shows have featured a wide range of acts including poetry readings, the performance of theatrical works and the performance of songs written by students and musicians including Nirvana, Stevie Nicks, Johnny Cash, LeAnn Rimes and Bon Jovi. Pl's Fact St. ¶ 18.

In 2005, the talent show – known as "Frenchtown Idol" – was scheduled to be held on May 20 at 7:00 p.m. in the auditorium of Frenchtown Elementary School. Def's Fact St. ¶ 6. Frenchtown Idol was organized and run by Erica Bruner ("Bruner"), Frenchtown Elementary's music teacher. Id. ¶ 7. Students were invited to choose an act they wished to perform and were required to develop, choreograph and practice their performances at home. Pl's Fact St. ¶¶ 33 & 34. Participation in the talent show was entirely voluntary, and the school did not grade the

---

[3]Indeed, the Master of Ceremonies for the 2005 talent show was Reverend Dan Baker ("Baker"), a pastor who lives in the Frenchtown community. Pl's Fact. St. ¶ 21. During the talent show, Baker performed vignettes, told jokes and entertained the audience between the performances. Id. ¶ 22. Moreover, talent shows in previous years had also featured performances with students and adults. Id. ¶¶ 24-27.

participants nor give the students credit for taking part in the performance.  Id. ¶¶ 35-37.

The Frenchtown School did, however, adopt various guidelines for the show including, in relevant part, the following: "(4) Materials, Costumes, and Acts must be "G-rated" (appropriate for all ages – nothing revealing, distracting, suggestive, depicting profanity, weapons, alcohol, drugs or illegal substances will be allowed.). . . (7) A copy of song lyrics (for any music used in your act) or skit must be reviewed by Miss Bruner. . . (9) No changes! Once you have been approved by the preview committee, you may not make any changes to your act."  Joint Exhibit ("Jt. Ex.") 6.  Moreover, all of the acts were subject to the review of a "preview committee" that was comprised of Bruner and two other teachers.  Id., ex. 5.  Any acts which Bruner or the preview committee felt were questionable were subject to the final approval of Brennan.  Pl's Fact St. ¶¶ 38, 40 & 41; Def's Fact St. ¶ 11.  In addition, the Frenchtown School was subject to policies enacted by the Board including Policy 6141.2 which provides "that no religious belief or nonbelief shall be promoted in the regular curriculum or in district-sponsored courses, programs or activities and none shall be disparaged." Jt. Ex. 82.

In accordance with school procedure, Plaintiff completed a sign up form proposing to perform the song "Part of Your World" at the talent show.  She was scheduled to perform this song for the preview committee on May 9, 2005.  However, at the preview, Plaintiff advised Bruner that she had decided to sing "Awesome God" at the talent show instead of her original selection.  Bruner, who was familiar with the song, advised Plaintiff that Brennan would have to review the song to ensure that such an overtly religious song was appropriate for a public elementary school.  Bruner Dep., 27:17-22; 29:3-6.  During her deposition, Bruner admitted that the religious content of Plaintiff's song was the only reason she asked Brennan to review it.  Id.

29:3-6.  Indeed, Bruner was asked whether "there any other reasons outside of the religious content of the song that you brought it to Joyce's attention?"  In response, Bruner answered "No." Id.

On May 10, 2005, Brennan reviewed the lyrics of "Awesome God" and determined that it was inappropriate for the Talent Show because of its "overtly religious message and proselytizing nature." Jt. Ex.3 ¶ 15; Def's Fact. St. ¶ 2.[4]  Moreover, Brennan noted that "the song is not merely a statement of religious beliefs. Instead, the song is a pronouncement to all about the wisdom, power and magnificence of God, and of the need to follow the teachings of God. . . .In

---

[4]Importantly, Defendant argues that Brennan's decision to reject "Awesome God" was primarily based on violent imagery contained in the song. Def's Brief for Summary Judgment ("Def's SJ Br.") at 12.  However, Defendant's certifications and depositions do not, in fact, support its position that violent imagery caused Brennan to reject this song.  For example, Brennan explains:

> I thought of the word proselytizing because that's how it felt to me. . .It was a song that was directing other people to believe what the person who was singing it. . .When I saw our God, again, that was my first indication that it wasn't just her God. It was our God and maybe, you know, my God isn't her God. "There is thunder in His footsteps and lightning in His fists" that was another thing that bothered me a bit because, again, I try to envision little ones hearing this and asking their parent. "And the Lord wasn't joking when He kicked 'em out of Eden. It wasn't for no reason that He shed his blood." All of these words to me were inappropriate.

As evidenced by the above testimony, Brennan does not suggest that she was concerned with the violent imagery in the song as opposed to its religious content.  Indeed, Brennan's testimony is primarily focused on the religious nature of the lyrics.  Moreover, Brennan's certification identifies only the "overtly religious message and proselytizing nature" as her reason for not allowing Plaintiff to perform "Awesome God" at the talent show.  Jt. Ex. 3 ¶15.  Finally, this after-the-fact justification is clearly refuted by the Board's letter of May 13, 2005, see infra at 6, which explained that the Board would not permit Plaintiff to sing "Awesome God" because of its religious content and prayer-like qualities.  Pl's Compl.¶¶ 49-52; Def's Ans. ¶¶49-52.  No other reason for the Board's decision was given.  Thus, based upon the undisputed record, the Court finds that violent imagery was not a factor in Brennan's or the Board's decision and I will not consider it in deciding the matter before me.

my view, this song is the musical equivalent of a spoken prayer and constitutes a form of proselytizing." Jt. Ex. 3 at ¶¶12,13 &15.  Thereafter, Bruner told Plaintiff that she would not be permitted to sing "Awesome God" at the talent show and she provided Plaintiff with two books of songs from which she could select a replacement.  Def's Fact St.  ¶ 23.  Furthermore, Plaintiff's mother ("Mrs. Turton") discussed the rejection of the song with Brennan who suggested that Plaintiff select another song – even one with religious content – to perform at the talent show if she so desired.  Id. ¶ 25.

In addition, Brennan told Mrs. Turton that she would discuss the issue at the Frenchtown Elementary School Board meeting that was to be held later that evening.   Accordingly, Mrs. Turton attended the Board meeting that night and provided the Board with information regarding the First Amendment's protections of private religious speech.  Pl's Compl. ¶ 43; Def's Ans. ¶ 43.  Following the presentation, the Board told Mrs. Turton that it would contact its attorney for advice and that Brennan would inform Mrs. Turton of the Board's decision by May 13, 2005.  Id. ¶ 45; id. ¶ 45.  On May 13, 2005, Brennan read Mrs. Turton a three page letter from the Board's attorney which expressed the basis for the Board's decision that O.T. would not be permitted to sing "Awesome God" at the talent show because of its religious content and because the song was the equivalent of a prayer.  Id. ¶¶ 49-51; id. ¶¶ 49-51.  Thereafter, the Turtons received a letter indicating that the Board's attorney had affirmed Brennan and the Board's decision to refuse to allow Plaintiff to sing "Awesome God" at the talent show.   Id. ¶ 57; id. ¶ 57.  Subsequently, on May 16, 2005, Plaintiff's counsel sent a letter to Brennan and Lent notifying them of a potential violation of Plaintiff's constitutional rights.  Id. ¶ 59; id. ¶ 59.  Brennan responded with a letter to Plaintiff's counsel stating that "[b]ased on advice from our attorney. . .

we cannot comply with your demand to allow [Plaintiff] to sing "Awesome God" at our school's talent show on Friday, May 20, 2005." Id. ¶ 60; id. ¶ 60.

On May 20, 2005, Plaintiff filed the instant Complaint alleging a violation of her First Amendment constitutional rights made applicable to the Defendant pursuant to 42 U.S.C. §1983[5]. Following discovery, Plaintiff and Defendant filed simultaneous motions for Summary Judgment on May 26, 2006.  Plaintiff contends that Frenchtown's exclusion of "Awesome God" amounted to viewpoint discrimination and violated her First Amendment rights.  In addition, Plaintiff alleges that Frenchtown's action violated the Free Exercise Clause, the Equal Protection Clause and the Establishment Clause.  Defendant, on the other hand, argues that Frenchtown's action did not violate Plaintiff's First Amendment rights because the decision to exclude "Awesome God" was related to the content of the song and not its viewpoint.  Moreover, Defendant alleges that if Plaintiff had been allowed to perform "Awesome God," the performance would have amounted to a violation of the Establishment Clause.

## II. Legal Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine issue of material fact is one that will

---

[5] 42 U.S.C. § 1983 provides a cause of action for a party seeking redress of a violation of federal constitutional rights by a person acting under color of state law.  Pursuant to section 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory. . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

permit a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To show that a genuine issue of material fact exists, the nonmoving party may not rest upon mere allegations, but must present actual evidence in support thereof.  Id. at 249 (citing First Nat'l Bank of Arizona v. Cities Svc. Co., 391 U.S. 253, 290 (1968)).  In evaluating the evidence, the Court must view evidence and draw inferences "in the light most favorable to the party opposing the motion."  Waldorf v. Shuta, 896 F.2d 723, 728 (3d Cir. 1990) (quoting Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

.

## III. Discussion

### 1. Free Speech

The First Amendment to the Constitution provides that "Congress shall make no law. . . abridging the freedom of speech."  U.S. Const. amend. 1.  The First Amendment's protection of speech encompasses religious, political and other types of speech. Widmar v. Vincent, 454 U.S. 263, 269 (1981).  Moreover, the Supreme Court has held that students in public schools do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines Sch. Dist., 393 U.S. 503, 506 (1969).  Thus, it is well-established that free speech rights are implicated in public schools. Perry Educ. Association v. Perry Local Educators' Association, 460 U.S. 37, 44-46 (1983).

### 2. Public Forum Analysis

Although, as noted above, students retain some First Amendment rights in public schools, the extent of a particular person or entity's right to free speech depends upon the nature of the

government forum at issue.  Perry Educ. Ass'n, 460 U.S. at 44-46; Child Evangelism Fellowship of New Jersey, Inc. v. Stafford Tp. School, 233 F.Supp.2d 647, 656 (D.N.J. 2002).   Thus, the initial question before this Court is the type of forum created by the Frenchtown Elementary School talent show known as Frenchtown Idol.

For First Amendment purposes, there are three types of forums: (1) traditional public forums, (2) nonpublic forums, and (3) designated public forums. Perry Educ. Ass'n, 460 U.S. at 45-46.  On one end of the spectrum are traditional public forums such as parks and streets that "by long tradition. . . have been devoted to assembly and debate." Id. at 45.  Absent a compelling interest, speech in a public forum may not be regulated based upon content.  Eichenlaub v. Township of Indiana, 385 F.3d 274, 280 (3d Cir. 2004).  At the other end of the spectrum are closed or non-public forums, which are neither traditionally open to the public nor designated by the government as such. Perry Educ. Ass'n, 460 U.S. at 46.   In non-public forums, the government may issue content-based regulations on expressive activity provided they are "reasonable in light of the purpose served by the forum and are viewpoint neutral." Id.  Finally, courts have recognized the existence of a third forum – the "limited" public forum – that is created when the government "intentionally open[s] a nontraditional public forum for public discourse." Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 802 (1985).   A limited public forum is one "that the government opens to particular types of communicative activity, on the basis of subject matter or speaker identity." Child Evangelism, 233 F.Supp. 2d 647 (D.N.J. 2002), aff'd, 386 F.3d 514(3d Cir. 2004); see also Good News Club v. Milford Cent. Sch., 533 U.S. 98, 107 (2001).  The government's ability to restrict a speaker's access in a limited public forum is subject to the same scrutiny applicable in a non-public forum. Id. (citing

<u>Cornelius</u>, 473 U.S. at 806).  Thus, the government "may not exclude speech where its distinction is not reasonable in light of the purpose served by the forum. . .nor may it discriminate against speech on the basis of its viewpoint."  <u>Child Evangelism</u>, 386 F.3d at 516 (citations omitted).

Elementary schools are not traditional public forums.  <u>Child Evangelism</u>, 233 F.Supp. 2d 647; <u>Perry Educ. Ass'n</u>, 460 U.S. at 46-47.  Therefore, the more difficult question for this Court is whether Frenchtown Idol remained a non-public forum or if it became a limited public forum by opening its doors for an after-school talent show.  Plaintiff argues that Frenchtown Idol became, at least, a limited public forum when it opened a channel of communication for creative performances by students[6].  Defendant, on the other hand, argues that Frenchtown Idol remained a closed forum and that this Court must analyze it as such.

Initially, in support of its argument, Defendant contends that the Supreme Court's analysis in <u>Hazelwood Sch. District v. Kuhlmeier</u>, 484 U.S. 260 (1988), controls.  In <u>Hazelwood</u>, the Court held that an official school newspaper produced by students in a journalism course could not properly be characterized as a forum for public expression.  <u>Id.</u> at 267-69.  The <u>Hazelwood</u> Court explained that "a school must be able to set high standards for the student speech that is disseminated under its auspices" and that "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored activities so long as their actions are reasonably related to legitimate pedagogical concerns."  <u>Id.</u> at 271-72.  With this in mind, Defendant alleges that Frenchtown Idol, like the newspaper in <u>Hazelwood</u>, can not be characterized a public forum.  Instead,

---

[6]The Court notes that while the record establishes that past Frenchtown talent shows have included performances by some non-student adults, the only adult who participated in Frenchtown Idol in 2005 was Dan Baker who acted as the Master of Ceremonies.

Defendant argues that Frenchtown Idol was a "a school-sponsored production," Def's Br. at 7, and thus, the Board could appropriately exercise control over speech, including Plaintiff's song, that "students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school." Hazelwood, 484 U.S. at 271.  The Court does not agree.

To begin, Hazelwood's "legitimate pedagogical concern" test only applies when a student's school sponsored speech could be viewed as the speech of the school itself.  Id.; Saxe v. State College Area School Dist., 240 F.3d 200, 213-214 (3d Cir. 2001).   School sponsored speech occurs when a public school or other government entity aims "to convey its own message." Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 833 (1995).  By contrast, when a school or other government body facilitates the expression of "a diversity of views from private speakers," the resulting expression is not school sponsored speech.  Id. at 834; Hazelwood, 484 U.S. at 270-72.  In the instant matter, Frenchtown Elementary did not aim to convey its own message through the medium of the school talent show.  Instead, the school invited students to participate in a talent show and flaunt their particular creative talents and skills through their individual performance selections.

Moreover, despite Defendant's attempt to analogize the facts in the instant matter to those at issue in Hazelwood, this Court finds that Hazelwood is easily distinguished.  In Hazelwood, for example, the forum in question was the official school newspaper which was printed with school funds and produced by students in a journalism class as part of the school's regular curriculum.  Further, the students' work was graded by a teacher and another faculty member supervised every aspect of the production including the selection of the editors, the number of pages in each edition, the assignment of stories, and the editing of all stories that appeared in the

11

paper.  Finally, the entire paper was reviewed by the principal before publication.  484 U.S. at 268-69.

Unlike Hazelwood, however, the forum at issue here is an after school talent show that was open to the entire Frenchtown community.  Moreover, Frenchtown Idol was not part of the school curriculum, but was, instead, a voluntary after-school event in which students were invited – not required – to participate.  Frenchtown Idol participants were obligated to select their own pieces for the performance, and to develop and rehearse them at home.  Indeed, despite some general oversight by faculty members to ensure that the selected material did not contain profanity, vulgarity or inappropriate sexual overtones, the school did not maintain any control over the participants' selections.  The school did not grade the participants nor give the students credit for taking part in the performance.  Moreover, the Master of Ceremonies at Frenchtown Idol was neither a school employee nor a student, but a pastor who lived in the Frenchtown community.  Tellingly, his remarks and vignettes were not screened by Frenchtown School or the Board.  In addition, the talent show did not occur during the course of the school day, or even immediately after school, but was scheduled to occur at 7:00 p.m.  Finally, the speech at issue here – a song selected and performed by an individual student – was the private speech of a student and not a message conveyed by the school itself.  Indeed, although the school may have promoted the talent show within the community, the school did not in any way promote the individual performances of any participants.  For these reasons, I find that Defendant's reliance on Hazelwood is misplaced; Plaintiff's song could not be considered school-sponsored speech, and thus Hazelwood's "legitimate pedagogical interest" test does not control this case.

Defendant also relies on the Eleventh Circuit's decision in Bannon v. Sch. District of

Palm Beach County, 387 F.3d 1209 (11th Cir. 2004) to support its proposition that Frenchtown Idol was a closed forum.  In Bannon, a student alleged that the school district violated her First Amendment rights when it compelled her to remove religious words and symbols from a mural she painted at a public school.  Id. at 1211-1212. There, the court found that the murals remained a closed nonpublic forum because they occurred in the context of a curricular activity.  Thus, the court held that the school did not violate the student's First Amendment rights when it removed the religious symbols and phrases contained in the mural.  Id. at 1214.  Specifically, the court explained that "expressive activities are curricular so long as they are merely (1) 'supervised by faculty members', and (2) 'designed to impart particular knowledge or skills to student participants and audiences.'" Id. (citing Hazelwood, 484 U.S. at 271).   Moreover, the Bannon court dismissed the student's argument that the expression was not curricular because the students "received no grade or credit for participation, the murals were painted on a Saturday outside of regular school hours, and students paid a small fee to participate."  Id. at 1215. Indeed, the court found that the student's expression "bore the imprimatur of the school and occurred in the context of a curricular activity."  Id.  Thus, the court held that the school could censor the student's expression subject to the limitations announced in Hazelwood.

Several facts in Bannon bear some similarity to the facts in the instant matter in that in both cases the student's actions took place after school hours, there was some teacher supervision, and the student received no grade or credit for their efforts.  However, I find that there are several critical distinctions.  First, in the instant matter, unlike in Bannon, Defendant has not established that the Frenchtown school talent show was designed to impart knowledge or skills to students or audiences.  Indeed, as discussed above, the students involved in the talent

show were required to select, develop and practice their "talent" at home and on their own time.

Although some faculty were involved in supervising the talent show, faculty members were not

involved in selecting or developing the performances.  Thus, I do not find under these undisputed

facts that the school was imparting any knowledge or skills to the students through the medium

of the talent show.  Moreover, in Bannon, the student murals were permanent fixtures

prominently located next to the school's main office and in a main hallway,  Bannon, 387 F.3d at

1214.  Given the location and permanency of the murals it is conceivable that  "students, parents

and other members of the public might reasonably believe [the] murals bear the imprimatur of

the school." Id.   Unlike Bannon, however, in the instant matter, Plaintiff's speech comprised a

performance of limited duration; indeed, Plaintiff's song would have been a temporary after-

school display of private speech that would occur during a public talent show comprised of

numerous performances.  For these reasons, this Court holds that Frenchtown Idol did not bear

the imprimatur of the school nor did it remain a closed nonpublic forum.


3. Viewpoint Neutrality

        However, were I convinced that Hazelwood and Bannon control under these facts,

nonetheless this Court need not finally resolve whether Frenchtown Idol established a limited

public forum or a closed nonpublic forum because the Board could not engage in viewpoint

discrimination in either forum.  Indeed, the Third Circuit has held that speech restrictions in both

limited public forums and nonpublic closed forums must be viewpoint neutral.  For example, in

Child Evangelism, the Third Circuit held that "even if the. . .fora were not limited public fora but

were closed, [Defendant] still could not engage in viewpoint discrimination." 386 F.3d at 526.

Similarly, in <u>Eichenlaub v. Township of Indiana</u>, the Third Circuit provided:

> The Supreme Court has not precisely instructed where the limited public
> forum is located on the First Amendment spectrum between the strict test
> for public forum regulation and the more relaxed test for nonpublic
> regulation. . . Earlier decisions. . . suggest that content-based restraints on
> limited public forums must be subject to strict scrutiny, and can survive
> only if they are supported by a compelling interest. Recently, however,
> the Court has apparently moved to the position that regulation of a
> limited forum may survive under a test that is less strict than that applied
> in the case of a general open forum. . .Under this refined test for
> reviewing limited forum restrictions, content-based restraints are
> permitted, so long as they are designed to confine the 'forum to the
> limited and legitimate purposes for which it was created'. . .<u>Two
> limitations remain. Any restrictions on speech must be viewpoint neutral
> and must be 'reasonable in light of the purpose served by the forum.'</u>

385 F.3d 274, 280 (3d Cir. 2004) (citations omitted)(emphasis added).  Thus, the central question

for this Court is whether the Board's refusal to allow Plaintiff to perform the song  "Awesome

God" was viewpoint neutral and reasonable in light of the forum's purpose, or if the restriction

amounted to viewpoint discrimination and violated the First Amendment.  <u>Rosenberger</u>, 515 U.S.

at 829; <u>Child Evangelism Fellowship</u>, 386 F.3d at 527.

In the instant matter, Plaintiff argues that the Board's action in refusing to allow her to

perform "Awesome God" amounted to unlawful viewpoint discrimination.  Indeed, Plaintiff

contends that because the school permitted religious content in the talent show – including songs

that reference both God and Jesus – Plaintiff's exclusion was necessarily based on the particular

religious views expressed by the lyrics of  "Awesome God."  Defendant, however, argues that the

rejection of  "Awesome God" did not amount to viewpoint discrimination.  Instead, Defendant

contends that its decision was based upon concerns over the proselytizing words of the song

"inasmuch as they assumed the audience would have the same beliefs as the singer and

15

commanded the listener to adhere to the singer's beliefs."  Def's. Moving Br. 12.

Under First Amendment jurisprudence, it is well-established that "[v]iewpoint discrimination is. . .an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."  Rosenberger, 515 U.S. at 829.  Indeed, in Child Evangelism Fellowship, the Third Circuit held that to "exclude a group simply because it is controversial or divisive is viewpoint discrimination.  A group is controversial or divisive because some take issue with its viewpoint."  386 F.3d at 527.   Numerous courts have considered whether particular restrictions have amounted to viewpoint discrimination based on religion.  In Bannon, for example, the court held that a school's refusal to allow a student to include religious symbols and phrases in a school mural did not amount to viewpoint discrimination because the school refused to allow anyone to make religious statements in the murals. 387 F.3d at 1216-1217.   However, in Church on the Rock v. City of Albuquerque, the court found that a city policy preventing a church from presenting, at city-owned senior centers, a film advocating the adoption of Christianity unlawfully discriminated based on the film's viewpoint.  84 F.3d 1273, 1279 (10th Cir. 1996).   Indeed, in Church on the Rock, the court noted that city had already opened its senior centers to the presentation of religious content including lectures entitled "The Bible as Literature" and "Myths and Stories About the Millennium" and had allowed speakers to discuss religion and the bible from historical, literary and philosophical perspectives.  Id.  Moreover, the court found that the film at issue only ran afoul of city policy because it advocated the adoption of the Christian faith; in contrast, "a film about Jesus's life that ended on a skeptical note and urged agnosticism or atheism would not have contravened city

16

policy." Id.  Thus, the court held that "[b]ecause 'the prohibited perspective, not the general subject matter' triggered the [city's ] decision to bar the private expression", the policy amounted to viewpoint discrimination.  Id.

This Court finds the facts and analysis in Church on the Rock to be persuasive.  In the instant matter, Frenchtown did not prohibit religious themes at its talent shows and students were allowed to perform religious songs and acts at Frenchtown Idol.  For example, Brennan testified that she would have permitted students to perform songs such as "God Bless the USA," "America the Beautiful," "The Battle Hymn of the Republic," "Jesus Take the Wheel" and "Jesus is Just Alright with Me" at the talent show.  Thus, as in Church on the Rock, Frenchtown had already opened the doors of Frenchtown Idol to religious speakers.  Indeed, after Brennan rejected "Awesome God" from inclusion in the talent show, she then suggested that Plaintiff select another song, even one with religious content, to perform at the talent show.  Def's Fact St. ¶ 25.  Moreover, as in Church on the Rock, Plaintiff's performance ran afoul of the school policy for screening performances because Defendant believed that the song "would likely be offensive to some in the audience."  Def.'s Moving Br. 14.  However, as the Child Evangelism court so aptly stated, to ""exclude a group simply because it is controversial or divisive is viewpoint discrimination." 386 F.3d at 527.  Therefore, in light of both Frenchtown Elementary's admitted tolerance for religious content and the exclusion of Plaintiff's particular religious song, I find that the Board's action amounted to viewpoint discrimination.

However, Defendant additionally argues that it was not Plaintiff's religious viewpoint but the proselytizing nature of the song that caused the Board to exclude it from the talent show; indeed, Defendant contends that the song was omitted because the school felt that it was "a

command to conform to the singer's beliefs," Def's Moving Br. 14.   Defendant argues that it had a legitimate pedagogical concern in distancing itself from proselytizing religious speech.   The Court does not agree.

To begin, the Court notes that the Third Circuit addressed and disposed of a similar argument regarding proselytizing religious speech in <u>Child Evangelism</u>.  386 F.3d 514.  There, the court refused to accept a school district's argument that it denied a religious organization's request to distribute materials at Back to School night because the school excluded "all groups that proselytize."  386 F.3d at 527.  In <u>Child Evangelism,</u> the court defined "proselytize" to mean "to recruit members for an institution, team or group and to convert from one religion, belief, opinion or party to another."  <u>Id</u>. at 528.  In light of this definition, the court held that the school had not in fact excluded all groups that "proselytize" because it allowed the Cub Scouts and a local wrestling club to place flyers around the school to recruit members.  Indeed, the court found that because the school only excluded religious groups that proselytize, the school's rationale was nothing more than a "euphemism for viewpoint-based religious discrimination."  386 F.3d at 527.

Unlike <u>Child Evangelism,</u> in <u>Walz v. Egg Harbor Tp. Bd. of Educ.</u>, the court upheld a school's restrictions on proselytizing speech in an elementary school.  342 F.3d 271 (3d Cir. 2003.  In <u>Walz</u>, the court considered whether a school's refusal to allow a first grade student to distribute pencils that included the phrase "Jesus [Loves] The Little Children" and candy canes with attached religious stories during a classroom holiday party violated the student's constitutional rights.  <u>Id.</u> at 274.  Importantly, the <u>Walz</u> court noted that plaintiff's actions came in response to the school's request for generic refreshments, activities and gifts for an in-class

holiday party.   In light of the plaintiff's unconforming response to the school's request, the court found that the plaintiff was not attempting to exercise a right to personal religious observance in response to a class assignment or activity, but was, instead, trying to " promote a religious message through the channel of a benign classroom activity." Id. at 280.   There, the court upheld the school's restrictions on plaintiff's expression and found that the restrictions "were designed to prevent proselytizing speech that, if permitted, would be at cross-purposes with its educational goal and could appear to bear the school's seal of approval."  Id.

In the instant matter, Frenchtown had solicited individual student performances for the talent show.  Indeed, the only restrictions communicated to students were set forth in the guidelines for the talent show, which included a requirement that the performance must be "G-rated."  Jt. Ex. 6.  Moreover, religious performances were welcomed by the school; for example, after Brennan rejected "Awesome God," she encouraged Plaintiff to choose another song to perform and explained that Plaintiff could choose a religious song if she so desired.  Thus, unlike Walz, the Plaintiff here was not controverting any rules or instructions by selecting "Awesome God."

In addition, similar to Child Evangelism, the record here is not only replete with instances of the school permitting religious speech, but there are numerous instances where the school would have allowed "proselytizing" speech as well.  See Child Evangelism, 386 F.3d at 528.  For example, the school would have permitted Frenchtown Idol performers to encourage audience members to: espouse a belief that it is important to take care of the earth, Brennan Dep. 59:8-18; espouse a belief that it is important to help poor and impoverished people, Brennan Dep. 56:4-16; and to lean on friends when they experience hardships. Brennan Dep. 64:10-23.  In light of

Frenchtown's tolerance of both religious and "proselytizing" content in the context of the talent

show, and in light of the Third Circuit's decision in <u>Child Evangelism</u>, I find that the Board's

refusal to allow Plaintiff to perform the song "Awesome God" at the Frenchtown Elementary

School talent show amounted to unlawful viewpoint discrimination.


4.  <u>Establishment Clause</u>

However, even if Defendant's action constituted unlawful viewpoint discrimination, this

Court must still consider whether Defendant sets forth a compelling interest that could justify its

discriminatory action.  <u>See</u> <u>Widmar v. Vincent</u>, 454 U.S. 263, 271, 440 (1981).  In the instant

matter, Defendant argues that its action was necessary in order to avoid violating the

Establishment Clause.  Specifically, Defendant argues that because of the song's religious theme

and proselytizing nature, and in light of the fact that Frenchtown Idol was a school-sponsored

event, allowing Plaintiff to perform this selection would have violated the Establishment Clause.

The Court does not agree.

The First Amendment's Establishment Clause prohibits governmental advancement or

restriction of religion. U.S. Const. amend. I.  "[T]he Establishment Clause ... mean[s] that [the]

government may not promote or affiliate itself with any religious doctrine or organization, may

not discriminate among persons on the basis of their religious beliefs and practices, may not

delegate a governmental power to a religious institution, and may not involve itself too deeply in

such an institution's affairs." <u>County of Allegheny v. American Civil Liberties Union</u>, 492 U.S.

573, 590-91 (1989) (footnotes omitted).  The Supreme Court has held that "a state interest in

avoiding an Establishment Clause violation 'may be characterized as compelling,' and therefore

20

may justify content-based discrimination. . . However, it is not clear whether a State's interest in avoiding an Establishment Clause violation would justify viewpoint discrimination." Good News Club v. Milford Central School, 533 U.S. 98, 113-114 (2001) (citations omitted).  Indeed, although the Supreme Court has not settled the question whether a concern about an Establishment Clause violation can justify viewpoint discrimination, the Supreme Court has rejected unfounded Establishment Clause defenses in free speech cases. See e.g.,  Good News Club v. Milford Cent. Sch., 533 U.S. 98, 113 (2001); Lamb's Chapel v. Center Moriches Union Free Sch. Dist., 508 U.S. 384, 395 (1993); Widmar, 454 U.S. at 272-73.

In Lamb's Chapel, the Supreme Court rejected a school district's defense that the Establishment Clause required it to deny a church access to school premises for a public viewing of a film dealing with family and child rearing issues after school hours.  508 U.S. at 394-95. There, the Court held that the school's fear of violating the Establishment Clause was "unfounded" because the film was not to be screened during school hours, was not sponsored by the school and would have been open to the public.  Id. at 395.  Thus, the Court held that there would be "no realistic danger that the community would think that the District was endorsing religion or any particular creed, and any benefit to religion or to the Church would have been no more than incidental."  Id.  Similarly, in Good News Club, the Court held that it need not determine whether viewpoint discrimination may be justified by a concern about the Establishment Clause because the school did not present a valid Establishment Clause interest. 533 U.S. at 113.  There, the Court found that a religious club's meetings which were held directly after school, were not sponsored by the school, and were open to any student with parental consent, could not amount to an establishment of religion. Id

21

In the instant matter, although this Court is presented with slightly different facts, the Court finds the above analysis persuasive.  Indeed, the Supreme Court has held that "there is a crucial difference between government speech endorsing religion, which the Establishment Clause forbids, and private speech endorsing religion, which the Free Speech and Free Exercise Clauses protect."  Board of Educ. v. Mergens, 496 U.S. 226, 250 (1990).   A religious activity may be deemed "state-sponsored" under the Establishment Clause if "an objective observer in the position of a secondary school student will perceive official school support for such religious [activity]."  Id. at 249-50.   Thus, the crux of the issue is whether Plaintiff's private religious speech could be seen as an endorsement of religion by the school.

Importantly, unlike Lamb's Chapel and Good News Club, here, the event at the center of Defendant's Establishment Clause concern was not a church-sponsored event that was to occur on school property.  Instead, the speech at issue was the individual performance of a religious song by a grade school student at an after school talent show.  Indeed, as discussed above, the talent show was open to creative performances by all students from kindergarten through eighth grade and was being hosted by an adult from the community.  The only substantive constraints for the talent show were that the performances be G-rated.

Moreover, despite Defendant's argument that because the talent show was sponsored by the school, Plaintiff's speech would somehow be imputed to the school, the Court finds that even if the school sponsored and promoted the talent show as an event, the school did not promote Plaintiff's – or any other student's – individual performance or speech.  Thus, this Court finds that the students' performances could not be imputed to the school.   Indeed, in Mergens, the Supreme Court explained that Congress has rejected the idea that students are not capable of

22

distinguishing between "'[s]tate-initiated, school sponsored, or teacher-led religious speech on the one hand and student-initiated, student-led religious speech on the other.'" 496 U.S. at 250-251 (quoting S.Rep. No. 98-357 (1984)).  Moreover, the Supreme Court has repeatedly "rejected the position that the Establishment Clause even justifies, much less requires, a refusal to extend free speech rights to religious speakers who participate in broad-reaching government programs neutral in design." Rosenberger, 515 U.S. at 839.   For these reasons, the Court finds that Defendant does not set forth a valid establishment clause concern.

Defendant also considers probative that "the audience was comprised of unsuspecting elementary school students, many of whom were required to attend in order to deliver their performances."  Def. Moving Br. at 24.  However, this Court takes issue with Defendant's factual and legal characterization of the matter.   First, the record establishes the voluntary nature of the talent show; although performers were obviously required to attend the performance, students were not otherwise required to perform or to attend.  In addition, nothing in the record demonstrates whether the audience was primarily comprised of elementary school students. Instead, the record clearly shows that the performance was open to the entire Frenchtown community.  To be sure, the performance took place at Frenchtown school and students were likely to be present, however, the performance occurred at 7:00 p.m. and it is highly unlikely that elementary students would attend on their own without parents or other chaperones.  In addition to these factual distinctions, the Court in Good News Club explained that "whatever significance we may have assigned in the Establishment Clause context to the suggestion that elementary school children are more impressionable than adults. . . we have never extended our Establishment Clause jurisprudence to foreclose private religious conduct during nonschool

hours merely because it takes place on school premises where elementary school children may be present." 533 U.S. at 115. Thus, the Court holds that Defendant's Establishment Clause concerns do not justify Frenchtown's discriminatory restriction.

Moreover, the Court finds that Defendant's reliance on public school prayer cases such as Lee v. Weisman, 505 U.S. 577 (1992) and Santa Fe Independent School District v. Doe, 530 U.S. 290 (2000) inapposite. In Lee, the Court considered whether a school policy that permitted principals to invite clergy members to give invocations and benedictions at school graduations violated the Establishment Clause. 505 U.S. 577. There, the Court held that "government involvement with religious activity in this case is pervasive, to the point of creating a state-sponsored and state-directed religious exercise in a public school." Id. at 587. Moreover, the Court noted that in light of the school's control over a high school graduation, the importance of the ceremony to the students, as well as the public and peer pressure to attend such a ceremony, "[t]he degree of school involvement here made it clear that the graduation prayers bore the imprint of the State," id. at 591, and that without providing dissenting students with an alternative to attending graduation, the school had "compelled. . . participation in an explicit religious exercise." Id. at 598.

Similarly, in Santa Fe, students alleged that the school's practice of permitting student-led, student-initiated prayer before football games violated the Establishment Clause. 530 U.S. 290. There, the Court noted that although game attendance was voluntary for most students, for other students, including cheerleaders, football players and band members, attendance at the games was mandatory and may have involved class credit. Id. at 311-312. Moreover, the Court noted that because the student body was involved in voting for whether "invocations" would be

24

delivered at football games and, if so, the identity of the spokesperson, the football audience would necessarily "perceive the pregame message as a public expression of the views of the majority of the student body delivered with the approval of the school administration." Id. at 308. Thus, the objective student would "perceive the inevitable pregame prayer as stamped with her school's seal of approval."  Id.

Initially, I find that the above cases present very different facts from the case before me. For example, unlike a high school graduation which is an important private and public ceremony of  lifetime significance that is solely controlled by a school, Frenchtown Idol was a talent show with limited school oversight.  Indeed, unlike in Lee, here, there is no suggestion that there was any pressure to attend or participate in the performance.  Moreover, unlike the football games at issue in Santa Fe, Frenchtown Idol did not mandate the participation of any individual student. Student performances at the talent show were not graded, nor were students given credit for participating in the talent show.  Further, although in Santa Fe, students were responsible for deciding whether prayers would be included at the football games, and if so, who would recite them, here, Plaintiff's performance was one of numerous individual student performances selected, developed, practiced and performed by the individual students and without substantial interference by the school.

For these reasons, this Court rejects the notion that the Frenchtown Idol audience would perceive Plaintiff's song as the "public expression" of anyone other than Plaintiff herself. Thus, I find that Defendant has not established a valid Establishment Clause concern that would justify discriminating against Plaintiff's speech.

25

**IV. Conclusion**

For the reasons discussed herein, Plaintiff's Motion for Summary Judgment is

GRANTED and Defendant's Motion for Summary Judgment is DENIED. An appropriate order

will follow.


Dated: December 11, 2006                    /s/ Freda L. Wolfson
                                            Honorable Freda L. Wolfson
                                            United States District Judge